Entered on Docket February 27, 2015

Below is a Memorandum Decision of the Court.

_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>HYUN J. UM and JIN S. UM,<br><br>Debtors. | **Case No. 10-46731**<br>**(Lead Case)** |
| In re:<br><br>THOMAS W. PRICE and PATRICIA A. PRICE,<br><br>Debtors. | **Case No. 10-46732**<br>**(Jointly Administered under Case No. 10-46731)**<br><br>**MEMORANDUM DECISION ON TRUSTEE'S MOTION TO ALLOW ADMINISTRATIVE CLAIM OF SPOKANE ROCK 1, LLC** |

This matter came before the Court on January 29, 2015, on the Motion of Eric D. Orse, the Chapter 11 Trustee (Trustee) of the jointly administered bankruptcy cases of Hyun and Jin Um and Thomas and Patricia Price (collectively referred to herein as "Debtors"), to allow the administrative claim of Spokane Rock 1, LLC (SR 1).

The Trustee moves the Court to allow Claim Number 35 filed by SR 1 on July 15, 2014, as an administrative claim in the amount of $259,913.22. The claim has two parts: (1) a claim

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 1

for substantial contribution to the estate pursuant to 11 U.S.C. § 503(b)(3)[1] and (4) in the amount of $95,652.42; and (2) a claim for the actual costs of preserving the estate in the amount of $164,260.80 pursuant to § 503(b)(1).

SR I filed its Claim Number 35 in response to a notice filed by the Trustee setting a deadline of July 15, 2014, to file administrative claims. According to the Exhibit to Proof of Administrative Claim, the subtotal of the claim sought pursuant to § 503(b)(3) and (4) is $95,652.42, and consists of attorneys' fees incurred in connection with the appointment of a trustee in the amount of $18,002, attorneys' fees incurred in connection with ratification of management authority in the amount of $22,254.50, attorneys' fees incurred in responding to trustee's requests and other tasks in the amount of $9,937.50 and costs for John Keller (forensic accounting and damages expert) in the amount of $45,458.42.

The subtotal of the second part of the claim sought pursuant to § 503(b)(1) is $164,260.80, plus an amount to be determined. This portion is identified as "State Court sanctions awarded against Debtors" for attorneys' fees of $160,298, costs of $25,631.30, and then reduced for several credits, for a subtotal of $164,260.80. In support of these amounts, SR I attaches copies of several King County Superior Court (State Court) pleadings from the pending litigation of <u>Prium Companies, LLC v. Spokane Rock I, LLC</u>, No. 12-2-01179-6-SEA (State Court Action). On June 20, 2013, the State Court entered Findings of Fact and Conclusions of Law (FFCL), pursuant to which the State Court awarded "monetary terms in accordance with the actual costs incurred by defendants in bringing these discovery motions through today's date." Ex. E to Proof of Claim No. 35, FFCL 16:5-6. In accordance with the FFCL, on July 30, 2013, the State Court entered an Order Granting Defendants' Motion in

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 2

Support of Fees and Costs, finding that SR I incurred $160,298 in reasonable attorneys' fees in bringing discovery motions and $25,631.30 in costs.

The Exhibit to Proof of Administrative Claim further indicates that SR I would be seeking an additional amount still to be determined and references in footnote 7 a Second Motion in Support of Fees and Costs filed in the State Court Action on June 12, 2014.

On December 23, 2014, the Court entered an Order Granting Trustee's Motion for Approval of Revised Settlement and Compromise of Spokane Rock Litigation and Claims (Order Approving Settlement). The treatment of SR I's administrative claim was negotiated as part of the settlement between the parties. Paragraph 7 of the Modified CR2A Agreement (ECF No. 844-1) provides:

> On July 15, 2014, SR I filed an administrative claim in the Price and Um bankruptcy proceedings, in the amount of $259,913.22 and amounts to be determined. The amount of this administrative claim is based upon, among other things, sanctions awarded and to be awarded in the state court proceedings arising from post-petition conduct. SR I agrees to cap its administrate claim in the Price and Um bankruptcy proceedings at $259,913.22, while the Trustee agrees that an administrative claim in that amount is reasonable and will not object.

The Order Approving Settlement expressly provides at paragraph 4, that "[n]othing in paragraph 7 of the Modified CR2A Agreement shall prejudice the right of any party other than the Trustee to object to the allowance of the administrative claim filed by Spokane Rock I, LLC." Order Approving Settlement 2:25-26 to 3:1, ECF No. 982. The Trustee cited no law in support of SR I's entitlement to an administrative expense, other than stating that he considered the amount "reasonable."

On December 30, 2014, the Trustee filed a Motion to Allow Administrative Claim of Spokane Rock 1, LLC. An objection was filed by Schwabe, Williamson & Wyatt (SWW), as the holder of an allowed administrative claim in each of the Debtors' bankruptcy cases. SWW's claim arises from services provided as counsel for the Unsecured Creditors Committee (UCC).

**Below is a Memorandum Decision of the Court.**

1. <u>11 U.S.C. § 503(b)(3) and (4)</u>

In order to be paid as an administrative claimant pursuant to 11 U.S.C. § 503(b)(3), two elements must be met: (1) the claimant must be a creditor of the estate; and (2) the creditor must have made a "substantial contribution." <u>In re Cellular 101, Inc.</u>, 377 F.3d 1092, 1096 (9th Cir. 2004).

The burden is on the creditor seeking administrative priority to demonstrate that it made a substantial contribution to the estate. <u>In re Downtown Inv. Club III</u>, 89 B.R. 59, 64 (9th Cir. BAP 1988). Although the court has broad discretion to award administrative expense status, § 503(b) is construed narrowly to keep fees and costs to a minimum and to preserve limited estate assets for the benefit of creditors. <u>In re Palau Corp.</u>, 139 B.R. 942, 944 (9th Cir. BAP 1992).

There is no dispute that SR I is a creditor. Accordingly, the first element is met. The principal test in the Ninth Circuit for establishing the second element, substantial contribution, is the "'extent of benefit to the estate.'" <u>Cellular 101</u>, 377 F.3d at 1096 (quoting <u>In re Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)</u>, 821 F.2d 1370, 1373 (9th Cir. 1987)). The benefit to the estate must be direct and not "incidental" or "minimal". <u>See, e.g.</u>, <u>In re Mortgs. Ltd.</u>, 2010 WL 6259981, at *7 (9th Cir. BAP Aug. 4, 2010).

11 U.S.C. § 503(b)(4) authorizes administrative priority for professional services of an entity whose expenses are allowable under § 503(b)(3). The burden is on the applicant to demonstrate that the professional services relate specifically to the activity that qualified the entity for administrative expense treatment. <u>See, e.g.</u>, <u>In re 9085 E. Mineral Office Bldg., Ltd.</u>, 119 B.R. 246, 253-55 (Bankr. D. Colo. 1990). The Ninth Circuit Bankruptcy Appellate Panel (BAP), however, has ruled that where a creditor makes a substantial contribution in a case, professional fees and costs may be awarded under § 503(b)(4) even if the creditor does not

have an independent allowable expense under § 503(b)(3). <u>In re Sedona Inst.</u>, 220 B.R. 74, 81 (9th Cir. BAP 1998).

SWW acknowledges that SR I provided services in this case. The test, however, is not whether the services provided were helpful. According to SWW, SR I is not entitled to administrative priority under § 503(b)(3) because the contribution was not "substantial." SWW argues that administrative expense priority for the $95,652.42 should be denied because SR I did not provide a demonstrable benefit to the estate. Rather, such fees were incurred for efforts that were merely duplicative of other parties in this case, such as the UCC and other creditors who filed the motion to appoint the Trustee, and Trustee's counsel, who filed the motion to ratify management authority.

SR I counters that it played a "vital role in key events dictating the course and progress of the case." Resp. of SR I to SWW Obj. to Allowance of Admin. Claim 7:14, ECF No. 1008. According to SR I, its request can be divided into three categories of services for which it provided a substantial contribution to the estate: (1) services leading to the appointment of a Trustee, (2) services leading to ratification of the Trustee's authority to manage the Debtor-owned entities; and (3) various categories of related tasks aiding in administration of the estate.

*a. Appointment of a Trustee*

SR I's claim includes $18,002 in attorneys' fees for services related to obtaining the appointment of the Chapter 11 Trustee and expenses for John Keller's services in the amount of $20,477.17.

The history of this case leading to the appointment of a trustee spans several years. A motion to appoint a trustee was originally filed by the UCC in March of 2011. At that time, although the Court had serious concerns about the case progress and alleged misconduct by the Debtors, the Court determined that the standard for appointing a trustee pursuant to 11 U.S.C. § 1104 had not been met. Instead, an examiner was appointed to investigate the

Debtors' affairs and prepare a report for the Court and creditors. After little progress over the next two years, a second motion to appoint a trustee was filed by the UCC in August 2013. A separate application to appoint a trustee was filed by James Rigby, Trustee for the bankruptcy estate of Michael Mastro, a creditor, and set for the same hearing date.

Briefs in support of the motions to appoint a trustee were also filed by East West Bank and Onyx Resolution LLC. An Order Granting Motions to Appoint Chapter 11 Trustee was entered on September 24, 2013.

The Court has reviewed the Court docket in detail, including the pleadings filed in support of the motions to appoint a trustee, the transcript of the Court's oral decision from the September 24, 2013 hearing and SR 1's pleadings in support of its application for an administrative claim, and concludes that SR I has failed to demonstrate that it provided a "substantial contribution" in obtaining the appointment of the trustee. Not only did SR I not file the motions seeking appointment, it did not join in that motion. SR I admittedly assisted the UCC by providing several declarations to which it attached copies of pleadings from the State Court Action and other related proceedings, which the UCC submitted to this Court in support of its motion. See, e.g., Birinyi Decl. in Support of UCC's Second Motion for Appointment of Chapter 11 Trustee, ECF No. 569 and attached exhibits. Such assistance, although beneficial, does not rise to the level necessary to elevate this claim above other unsecured creditors. Many of the documents provided are public records that the UCC could have obtained without SR I's assistance.

Presumably SR I provided additional assistance as well. Although the evidence provided by SR I supported the Court's decision to appoint a trustee, this was not the only, or even a substantial portion of the evidence relied on by the Court. Numerous exhibits and pleadings were filed in support of the motions to appoint a trustee. The alleged misconduct of the Debtors in the pending State Court Action with SR I was only one factor relied on by this

**Below is a Memorandum Decision of the Court.**

Court. For instance, the Court also considered findings from the Pierce County, State of Washington litigation of <u>Romart Inv. LLC v. Olson Brothers Excavating Inc.</u>, Case No. 11-2-05648-7, which this Court stated "once again provid[es] a strong case for cause for appointment of a trustee under section 1104(a)(1)." Transcript of the Court's Oral Ruling Sept. 24, 2013 13:15-17, Ex. H to Decl. of Marquez-Garrett, ECF No. 1009. This information was provided to the Court as an attachment to the Declaration of Manish Borde, counsel for Rigby, filed on August 21, 2013. <u>See</u> ECF No. 573. His declaration is only one of multiple declarations filed in this case, many of which contain evidence upon which the Court relied in making its decision to appoint a trustee.

The Court agrees with the UCC that SR I provided a benefit to the UCC, and incidentally the estate, but it was only one of many parties that provided such assistance. If mere benefit or assistance was the standard, many creditors in this case would be entitled to administrative priority. In bankruptcy cases where assets are limited and the goal is to distribute the assets that do exist as fairly as possible, it would be contrary to this goal to elevate the claims of any party that provides a mere benefit. That is why the standard is high. As recognized above, § 503(b) is to be construed narrowly and it is a heavy burden for a creditor to establish that its claim should be elevated over other unsecured creditors. For these reasons, the contribution must be "substantial." Based on the evidence provided, the Court concludes that SR I did not provide a substantial contribution in obtaining the appointment of the Chapter 11 Trustee.

The same is true of the claim filed by SR I for the expenses of John Keller related to the appointment of a trustee. SR I seeks administrative priority for Keller's expenses in the amount of $20,477.17 related to this task.

John Keller is a licensed private investigator. His declaration was filed in support of Rigby's application to appoint a trustee. <u>See</u> ECF No. 574. In his declaration, Keller indicates

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 7

**Below is a Memorandum Decision of the Court.**

that he was contacted by SR I in October 2012 to "assist in an investigative/forensic accounting capacity in an ongoing matter concerning litigation between Spokane Rock and Prium Companies." Keller Decl. 1:18-20, ECF No. 574. This was prior to the Debtors being added as counterclaim defendants in the State Court Action. Attached to John Keller's declaration as Exhibit A is a declaration Keller filed in the State Court Action. The Court acknowledges that Keller's declaration is one of the reports it considered and quoted in its oral decision granting the motion to appoint a trustee. The Court also considered, however, the reports of Anita Eixenberger, Ted Durant and the Court appointed Examiner, who is also a certified public accountant. Each of these reports led to the same conclusion, that the accounting practices of these Debtors could not be relied upon. Although Keller's report was instructive, the Court is not willing to elevate his expenses for preparing this report to administrative priority. The Court reviewed Keller's invoices, which are attached as Exhibit D to SR I's Claim Number 35. The Keller expense for which SR I seeks administrative priority was not incurred in preparation of the motion to appoint a trustee. Rather, these are expenses that appear to have been incurred by SR I solely in preparation of the pending State Court Action and also relied on by the State Court Judge in her decision. Such expenses would have been incurred even if a motion to appoint trustee was never filed.

Accordingly, the Court concludes that SR I has failed to satisfy its burden of demonstrating that the services for which it seeks administrative priority related to the appointment of a trustee provided a substantial contribution. SR I's request for administrative priority for attorneys' fees in the amount of $18,002 and expenses in connection with John Keller's services in the amount of $20,477.17, is denied.

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 8

Case 10-46731-PBS    Doc 1021    Filed 02/27/15    Ent. 02/27/15 13:26:39    Pg. 8 of 15

*b. Ratification of Management Authority*

On October 4, 2013, the Trustee filed a Motion for Order Ratifying Transfer of Management Powers of Prium Companies, LLC (Prium) to Trustee (Ratification Motion). SR I seeks $22,254.50 as an administrative expense related to the Ratification Motion.

Unlike the motions to appoint a trustee, SR I filed a memorandum in support of the Ratification Motion. See ECF No. 648. SR I also filed a declaration to which significant evidentiary support was attached. See Decl. of Marquez-Garrett, ECF No. 651. After a highly contested hearing, an agreed order was eventually entered granting the Trustee full management authority of Queen High Full House, LLC and Prium, PPM and other related entities in which the Debtors held a 100 percent ownership interest. The grant of this motion was a critical step in preserving estate assets.

The Court concludes that SR I did provide a substantial contribution to the case in regards to the Ratification Motion. It was during the pendency of this motion that SR I began to take an active role in the bankruptcy case. Prior to that time, SR I's involvement was limited to the motion for relief from stay it filed in February of 2013, and as support for the UCC as set forth above. When the Ratification Motion was filed, however, SR I took an independent role and vigorous stance in support of the Trustee. It is the Court's opinion that SR I and the evidence it provided was instrumental to the eventual agreed order, and it is undeniable that its involvement in the process and evidence provided in support was relied on heavily by the newly appointed Trustee. The Trustee openly acknowledged SR I's contributions in his reply in support of the Ratification Motion in stating "[the Trustee] is supported in this regard by the Creditor's Committee and the briefing of Spokane Rock I, LLC (Dkt. #645), whose position should be given considerable weight in light of its years of experience investigating the Debtors' affairs." Trustee's Reply in Support of Ratification Motion 5:13-17, ECF No. 662. These factors differentiate such fees from those incurred in regards to the appointment of a

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 9

**Below is a Memorandum Decision of the Court.**

trustee and persuade the Court that SR I provided a substantial benefit to the estate in regards to the Ratification Motion.

SR I has also submitted detailed time records to support the fees sought related to this task. The Court concludes that the fees sought related to this task are reasonable. Accordingly, the Court will allow $22,254.50 as an administrative expense related to the Ratification Motion.

*c. Various Related Tasks*

SR I also seeks attorney's fees of $9,937.50 and expenses related to John Keller in the amount of $24,981.25. A breakdown of such fees and costs are set forth in Exhibit A to Marquez-Garrett's declaration filed January 26, 3015, and allegedly relate to various tasks taken at the request of the Trustee at various stages in these proceedings. See ECF No. 1009.

Exhibit A to Marquez-Garrett's declaration is a Lodestar Calculation of the various fees sought separated into the various categories. The Court has reviewed this exhibit in detail and in particular, the various time records categorized as "Assisting and Providing Information to Benefit of the Estates." Although the fees were admittedly incurred, the Court is unable to determine from the description provided how such services benefitted the Debtors' estates as opposed to serving SR I's own self-interest in the pending State Court Action. The Ninth Circuit Court of Appeals (Ninth Circuit) recognizes that the mere existence of some self-interest on a creditor's part does not, in and of itself, preclude payment as an administrative expense. See Cellular 101, 377 F.3d at 1098. However, the extent of its relevance has not been determined. In Cellular, the Ninth Circuit declined to choose between "competing approaches" in the circuits as to the importance of self-interest to this analysis because in that case, any concern about the benefit to the creditor was "outweighed by the extent of the benefit those efforts conferred on the estate." Celluar, 377 F.3d at 1098. The case before this Court does not present such a situation. SR I has failed to meet its burden in establishing how the

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 10

miscellaneous fees incurred in assisting the Trustee and UCC on "various related tasks" provided a substantial benefit to the estates.

SR I also seeks administrative priority for $24,981.25 of Keller's expenses under this category. No explanation or breakdown was provided as to how Keller's expenses were apportioned or why this amount fits under this category. In addition, SR I failed to provide any explanation as to how his services in this amount specifically benefited the Debtors' estates. SR I's claim for administrative priority for $9,937.50 in fees, and expenses of $24,981.25 in connection with John Keller is denied.

2. 11 U.S.C. § 503(b)(1)

SR I also seeks administrative expense priority for a claim in the amount of $164,260.80 pursuant to § 503(b)(1). This claim stems from sanctions awarded by the King County Superior Court in the State Court Action.

11 U.S.C. § 503(b)(1) allows as an administrative expense those expenses that are "the actual, necessary costs and expenses of preserving the estate." Typically "benefit" to the estate is a prerequisite for granting administrative expense priority pursuant to § 503(b)(1). SR 1 admits that the expenses sought pursuant to this section do not meet this requirement. Nonetheless, it argues that it is entitled to administrative priority pursuant to an exception to the "actual and necessary" requirement recognized by the United States Supreme Court (Supreme Court) in Reading Co. v. Brown, 391 U.S. 471 (1968).

In Reading, the Supreme Court allowed administrative expense priority to a claim for damages caused by a postpetition fire at the debtor's premises based on the asserted negligence of a court appointed receiver. Even though the claim did not arise from a transaction with the debtor-in-possession that directly benefited the estate, the Supreme Court held that in the interest of "fairness to all persons having claims against an insolvent" these

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 11

**Below is a Memorandum Decision of the Court.**

claims that arose postpetition were actual and necessary expenses of preserving the estate. Reading, 391 U.S. at 477.

To reach its conclusion, the Supreme Court first addressed whether the trustee breached some legal duty that gave rise to a right to payment under state law. Reading, 391 U.S. at 477. The Supreme Court then addressed the priority issue, by balancing the objective of the debtor's rehabilitation against the desirability of allowing those injured by the operation of the business during the bankruptcy process to recover ahead of those for whose benefit the business was carried out. Thus, the cost must be one "ordinarily incident to operation of a business," done while preserving the estate, which includes the "larger objective . . . of operating the debtor's business with a view to rehabilitating it." Reading, 391 U.S. at 475-77, 483.

Although the Reading exception is a narrow one, its continued validity has been recognized in multiple Ninth Circuit court decisions. See, e.g., In re Ybarra, 424 F.3d 1018, 1025 n.10 (9th Cir. 2005); In re Kadjevich, 220 F.3d 1016. 1019-20 (9th Cir. 2000); In re Megafoods Stores, Inc., 163 F.3d 1063, 1071-72 (9th Cir. 1998). Reading has also been expanded to include injuries caused by torts and other wrongdoings. In a case decided in the Western District of Washington, the bankruptcy court further held that attorneys' fees and costs resulting from a debtor's pursuit of a legally frivolous postpetition arbitration constituted an administrative claim. In re E.A. Nord Co., 78 B.R. 289, 292 (Bankr. W.D. Wash. 1987).

SWW argues that administrative expense priority for this portion of the claim should be denied because the sanctions were awarded due to ultra vires conduct of the Debtors. According to SWW, the Debtors' actions that resulted in the sanction award were not in connection with performing their duties as debtors-in-possession. The Court acknowledges that this is a difficult issue, as the case law is anything but clear. After careful review of the

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 12

Reading case and subsequent decisions discussing its application, the Court concludes that the Reading exception does not apply to the facts of this case.

In order to be accorded administrative priority under Reading, the acts must arise from the operation of the debtor's business. Reading, 391 U.S. at 483-84; Kadjevich, 220 F.3d at 1019. In a case such as this, where the Debtors are individuals, the Debtors' business is the rehabilitation of their individual bankruptcy estates. SR I's claim is not entitled to administrative priority because the attorneys' fees at issue do not arise from the Debtors' operation of their individual estates, but the operation of Prium.

The State Court Action was commenced by Prium, not the Debtors. The award upon which this portion of the claim is based is the State Court's FFCL dated June 20, 2013, and Order Granting Defendants' Motion in Support of Fees and Costs entered July 30, 2013. According to the FFCL, the spoliation started as early as December 2010 or in January 2011 and continued through January 2013. FFCL 9:6-9, Ex. E to Proof of Claim Number 35. Although these acts were taken by the Debtors postpetition, the conduct upon which this award is based precedes the Debtors' joinder in the State Court Action, which did not occur until March of 2013. Prior to their joinder, any acts taken by the Debtors in the course of the State Court Action were taken on behalf of Prium. Therefore their actions were not taken with the objective of rehabilitating their individual estates.

Further, the Reading exception is to be narrowly construed and applies to a limited set of circumstances. This makes sense as the exception writes out the "benefit" requirement typically required to elevate a claim to administrative priority. Out of a sense of "fairness to all persons having claims against an insolvent" that suffer injury, the Supreme Court determined that under limited circumstances present in that case, "'actual and necessary costs' should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." Reading, 391 U.S. at 483. Such a result was

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 13

determined fair because the "petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law." Reading, 391 U.S. at 478. Such circumstances are not present in the case before the Court.

Although not completely analogous, the situation before the Court is similar to a claim based on acts taken by a Chapter 7 debtor, in that in both cases the claim does not stem from acts incurred in the operation of a business. In 800Ideas.Com, Inc., the BAP denied administrative expense priority for penalties assessed against a debtor by the Internal Revenue Service due to the trustee's failure to timely file its postpetition corporate tax returns. In re 800Ideas.com, Inc., 496 B.R. 165 (9th Cir. BAP 2013). The BAP determined that Reading did not apply in that context, in part because the trustee was not operating the business of the debtor. The BAP recognized that applying Reading in the context of an operating business is consistent with the fundamental fairness doctrine espoused in the case because "[p]riority for the fire claimants over the unsecured creditors was based upon the quid pro quo for the continued operation of the business." 800Ideas.com, 496 B.R. 178. In this case, there is no quid pro quo because the acts were taken on behalf of Prium.

The Court, however, is not holding that administrative expense priority is never appropriate in an individual Chapter 11 debtor context simply because the debtor is an individual, as opposed to an operating business. There may be situations where fairness would dictate that administrative status be granted to parties injured by acts taken by an individual debtor in furtherance of the business of the debtor's individual estate. This is not such a case.

In addition, even if the award was found to be based on the Debtors' operation of their business and it was determined "fair" to elevate this claim over other unsecured creditors, SR I would also have to establish that the claim arose postpetition. See § 503(b)(1) (providing that administrative expenses include certain costs and expenses rendered "after the

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 14

commencement of the case"). In Kadjevich, the Ninth Circuit denied administrative expense priority for a postpetition fee award to a creditor due to the debtor's bad-faith breach of a settlement because it determined that the award was based on a prepetition claim. The "source" of the award in that case was the prepetition fraud claim, and the fact that the debtor "did not engage in the particular misconduct that caused the fees to be awarded until after he filed his bankruptcy petition does not change the fundamentally pre-petition nature of the fraud action and of the total resulting judgment." Kadjevich, 220 F.3d at 1020. As in Kadjevich, the source of the fee award in this case is not litigation commenced by the estate postpetition. The State Court Action was commenced by a party other than the Debtors and appears to be based upon claims that primarily originated prepetition, as set forth in the Defendants' Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Amended Complaint for Declaratory and Other Relief, filed in the State Court Action. The fact that the misconduct took place postpetition will not change the nature of these claims.

The Court is mindful of the fact that this claim has been significantly limited by the settlement agreement between the Trustee and SR I, which was approved by the Court on December 23, 2014, and that the State Court entered a Final Judgment on Fees and Costs and Order of Dismissal on January 28, 2015, for a total amount of attorneys' fees and costs of $1,103,383.61. See Proof of Claim Number 37, filed by SR I on February 3, 2015. Such additional amounts, however, are not before this Court. SR I agreed to limit its administrative claim to $259,913.22, which includes $164,260.80 in sanctions previously awarded. This portion of the award does not qualify as an "actual and necessary expense" of preserving the Debtors' estate and is therefore not entitled to priority pursuant to § 503(b)(1).

Accordingly, the Court concludes that SR 1 is allowed an administrative claim in the amount of $22,254.50.

/// End of Memorandum Decision ///

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO ALLOW ADMINISTRATIVE
CLAIM OF SPOKANE ROCK 1, LLC - 15